IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DELBERT THOMAS MOORE, JR.        :

    Plaintiff                                          :

v.                                                           :        Civil No. JFM-02-4071

RICHARD ALAN SIMMONS              :

    Defendant                                      :

MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This memorandum is submitted on behalf of Delbert Moore, plaintiff, in opposition to the motion for summary judgment filed by Richard Simmons, defendant. Plaintiff brought this action under 42 U.S.C. § 1983, alleging that he was illegally arrested and charged by defendant without probable cause on July 22, 1999. Defendant, who removed this case to this court from the District Court of Maryland for Anne Arundel County, has filed a motion for summary judgment, contending that he is entitled to judgment as a matter of law. Defendant's contention is based on the assertion that he had probable cause to arrest plaintiff "as a matter of law." Defendant's Memorandum at 3. That assertion depends upon acceptance of defendant's version of the facts, which defendant portrays as undisputed. However, there are disputes about the facts that preclude the acceptance of defendant's version of the facts on summary judgment. Because of these factual conflicts, a trial is required.

FACTS

    On the evening of July 22, 1999, plaintiff and a co-worker, Kevin Donnells, patronized the Cancun Cantina, a bar and club in Glen Burnie, Maryland. It was a Wednesday night, and Ladies' Night, at the bar. At approximately 1:45 in the morning, plaintiff and Donnells left the bar because

it was getting close to closing time. (Ex. 1, Moore dep. at 12-13). Plaintiff and Donnells stayed outside of the club in order to talk and watch the exit for a female whom they had met inside the club. They sat on a planter box next to a marked Anne Arundel County police cruiser that was parked outside the front door. (Id. at 14-15). According to Moore, two uniformed Anne Arundel County police officers stood nearby, within ten to fifteen feet of where he and Donnells were standing. Moore stated that he and Donnells were within direct view of these officers at all times. (Id. at 19, 28-29; Ex. 2, Affidavit of Delbert Moore at ¶ 3). The entrance to the bar and the parking lot were well lit and crowded with people leaving the bar. (Ex. 2, Affidavit of Delbert Moore at ¶ 3).

While waiting, Donnells glanced in the police cruiser. He drew plaintiff's attention to the fact that the keys were still in the ignition of the cruiser. (Ex. 1, Moore dep. at 16). Plaintiff thought this was strange, as he believed it was against police department policy to leave keys in a police car. (Id. at 16-17).[1] Moore and Donnells stood and looked in the car for a couple of minutes. Plaintiff also watched the door to see if the female whom they had met inside was leaving the club. (Id. at 15). Defendant approached plaintiff and Donnells from behind and demanded that they get away from his car. (Id. at 18, 20). Defendant seemed agitated. Plaintiff and Donnells readily complied and began to walk away from the cruiser towards the parking lot. Defendant continued to shout at them, accusing them of attempting to break into his car. Plaintiff began to walk away, but defendant continued to yell to get away from the cruiser. Plaintiff stopped and calmly informed defendant that he had not been attempting to break into the cruiser. Defendant became even more

---

[1] Defendant stated that it would be a violation of departmental policy to leave the keys in the ignition if the vehicle was unattended, but that the vehicle was not unattended because he was within twenty-five feet of the vehicle and watching it at all time. (Ex. 3, Simmons dep. at 30-32).

agitated, grabbed plaintiff, pushed him toward the patrol car, bent him over the hood and handcuffed him. (Id. at 20-21; Ex. 2, Affidavit of Delbert Moore at ¶ 5). Despite the presence of at least two other police officers on the scene, Donnells walked back to his car without hindrance and drove away. (Ex. 2, Affidavit of Delbert Moore at ¶ 5).

Defendant Simmons' version of the events leading to plaintiff's arrest are somewhat different. Defendant was on duty at the bar that night for a "business check;" his function was to allay any problems that might arise as patrons left the bar at closing time. (Ex. 3, Simmons dep. at 16, 22). According to defendant, the bar could typically draw crowds of 500-1500 people, and Ladies' Night crowds were large. (Id. at 22-23). Defendant was standing near the front door of the bar, approximately twenty-five feet from where his car was parked in front of the planter where plaintiff and Donnells sat. (Id. at 16-17). The car was within arms' length reach of the planter. (Id. at 30). Contrary to plaintiff's account, defendant claimed there were no other officers in the vicinity of his cruiser. (Id. at 24-25, 35-36). He stated that there was another officer, Officer Sereboff, near another entrance to the bar. (Id. at 20-21).

Defendant Simmons asserts that it was plaintiff who first approached the car and motioned Donnells to approach the car and look inside. He also asserts that he saw Donnells grab the door handle and attempt to open the door. (Id. at 17). This is in direct contrast to plaintiff's assertion that Donnells never touched the handle of the car. (Ex. 1, Moore dep. at 17). Defendant then stated that plaintiff and Donnells began to walk away from the car, in different directions, as he was walking towards the car. (Ex. 3, Simmons dep. at 17-18, 34-35). Again, this is contrary to plaintiff's account in that he and Donnells began to walk away from the car on defendant's order. (Ex. 1, Moore dep. at 20). Defendant yelled to Officer Sereboff to stop Donnells while he approached plaintiff and

3

placed him under arrest. (Ex. 3, Simmons dep. at 18).

Defendant placed plaintiff in the patrol car and informed him that he was being arrested for trying to break into the police cruiser. He accused plaintiff as acting as a "lookout" while Donnells attempted to break into the cruiser. (Ex. 3, Simmons dep. at 41). However, defendant has admitted that plaintiff never touched the cruiser, nor did he ever do anything to tamper with it. (Id. at 19, 40-41; Ex. 4, Transcript. at 7, 8). Defendant alleges he saw Donnells touch the door handle of the cruiser, (Ex. 3, Simmons dep. at 17), but plaintiff states that Donnells never touched the car. (Ex. 1, Moore dep. at 17). Plaintiff was transported to the police station where defendant charged him with "tampering with a motor vehicle." Plaintiff was later released on his own recognizance. (Id. at 21).

Defendant gave differing accounts of why Donnells was not arrested. At the trial of the criminal charge, defendant testified that "Officer Sereboff was unaware of what was going on." (Ex. 4, Transcript at 5.) On his deposition, however, he testified that Officer Sereboff initially apprehended plaintiff's companion but then left him to assist in subduing plaintiff. (Ex. 3, Simmons dep. at 37-38). In his answers to interrogatories, defendant stated that Donnells "walked away without being apprehended." (Ex. 5, Answer No. 5). Defendant asserted that he did not think that pursuing Donnells, who was allegedly the perpetrator of the crime for which plaintiff was arrested as an accomplice, was a "big deal." (Ex. 3, Simmons dep. at 40).

Plaintiff reported to work at the FBI that morning at 7:30 a.m, his usual time. Within an hour of his arrival his supervisor approached him about the arrest. (Ex. 1, Moore dep at 23-24). Because of the rapidity in which his supervisor found out about the arrest, plaintiff concluded that defendant had informed his employer of the arrest. (Id. at 25). Defendant stated that he might have

called plaintiff's employer although he did not specifically recall doing so. (Ex. 3, Simmons dep. at 49-51). Plaintiff received counseling and an oral reprimand in his file as a result of the incident. (Ex. 1. Moore dep. at 22).

On November 8, 1999, the charge against plaintiff was tried in the District Court of Maryland for Anne Arundel County. Plaintiff was found not guilty of tampering with defendant's cruiser. (Ex. 4, Transcript at 15-16).

ARGUMENT

I. The Summary Judgment Standard

As the court is well aware, when ruling on a motion for summary judgment, the judge's role "is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). On summary judgment, the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences. Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 233 (4th Cir. 1991). Summary judgment should be granted in those cases where it is "perfectly clear" that no genuine issue of material fact remains unsolved and inquiry into the facts is unnecessary to clarify the operation of the law. Haavistola v. Community Fire Co., 6 F.3d 211 (4th Cir. 1994). All permissible inferences from the underlying facts must be drawn in the light most favorable to the party opposing the motion. Id.

II. Defendant Did Not Have Probable Cause To Arrest Plaintiff

Plaintiff has a right to be free from arrest without probable cause. See Ransom v. Baltimore County, 111 F. Supp. 2d 704, 710 (D. Md. 2000). It is well established that a plaintiff may recover damages under 42 U.S.C. § 1983 when a police officer makes an arrest without probable cause. See,

e.g. Moody v. Ferguson, 732 F. Supp. 627, 632 (D.S.C. 1989). Probable cause requires more than a mere suspicion that criminal activity is taking place or is about to take place. Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002). The standard for the determination of probable cause are the facts and circumstances known to the arresting officer at the time of the arrest. Id.

Defendant arrested plaintiff and charged him with tampering with a motor vehicle. Defendant admitted at the trial of the criminal charge that plaintiff never touched the patrol car.[2] Therefore, defendant attempts to justify the arrest on the notion that plaintiff was an "accomplice" to Mr. Donnells. Acceptance of this theory requires the court to accept as true defendant's testimony that he witnessed Mr. Donnells grab the door handle and move it up and down. However, plaintiff testified that Mr. Donnells did not touch the door handle. Inasmuch as defendant's assertion that Mr. Donnells attempted to open the door of the car is central to the claim that there was probable cause to believe that the crime of tampering with a motor vehicle occurred, this conflict prevents the entry of summary judgment.

Apart from this direct contradiction, there are numerous other conflicts in the parties' versions of the facts that undermine the credibility of defendant's account, and require a trial to determine whether he is telling the truth. According to plaintiff's account of the facts, he and Mr. Donnells were standing in a well lit area directly in front of the entrance to the club and within ten to fifteen feet of two police officers. Those police officers made no attempt to stop them from

---

[2] Defendant seeks to minimize the elements of the crime, in an attempt to negate the relevance of the issues of fact. Defendant's Memorandum at 7-8 . Apparently defendant now asserts that plaintiff would be guilty of tampering with a motor vehicle simply for looking in the car. The case that defendant cites, In re John R., 41 Md. App. 23 (1978), does not support this construction of the statute. Apart from the extreme overbreadth of such a construction, it is directly contrary to defendant's claimed basis for charging plaintiff, which was that he was trying to break into the car.

walking away from the car after defendant directed them to do so. Defendant states, however, that there were no other police officers near the car. This contradiction is obviously material as it is unlikely that Moore and Donnells would attempt to tamper with a car under such circumstances. Defendant's statement that there were no other police officers in the vicinity may be seen as an attempt to bolster the basis for his statement that they were attempting to break into his cruiser. Defendant's statement that plaintiff approached the car first, which is contrary to plaintiff's account, may also be seen as an attempt to bolster plaintiff's participation.

Furthermore, according to plaintiff, no attempt was made to apprehend Mr. Donnells, who allegedly was the "principal" in the commission of the "crime." Mr. Donnells was permitted to walk to his car and leave the scene unimpeded. Defendant gives several accounts of why the other individual was not apprehended. These contradictions are material to the issue of whether defendant's account of the facts should be believed.

Contrary to defendant's implication that plaintiff and Donnells attempted to flee, which is cited as a basis for a finding of probable cause(Defendant's Memorandum at 5, 10), plaintiff's account is that he walked away because he was directed by defendant to move away from the car. This contradiction is also material to the issue of whether defendant's version of the facts is to be accepted.

Other facets of the surrounding circumstances also bear upon defendant's credibility. The fact that defendant's conduct in leaving his keys within the car may have violated departmental policy may have also contributed to defendant's demeanor and attitude, which plaintiff characterized as markedly agitated and choleric. This is further evidenced by the fact that, rather than remaining to monitor the crowd leaving the bar at closing time, defendant arrested and transported plaintiff to

7

the police station, leaving Officer Sereboff as the only officer on the scene, according to defendant's version.  Furthermore, defendant's conduct in immediately contacting plaintiff's employer also bespeaks a motivation beyond that of simply apprehending an individual and charging him as required by the scope of defendant's duties.  While the issue may be, as defendant observes, whether defendant objectively had probable cause, this does not render defendant's motive irrelevant.  The issue of motivation is relevant because it bears upon defendant's credibility.  The credibility of defendant is central to the issue of whether the facts asserted by defendant are true.  Defendant's motivation bears upon whether he had reason to assert facts that are not true; combined with the evident conflicts between defendant's version of the events and plaintiff's, summary judgment is precluded.

Finally, defendant puts great weight on the fact that at plaintiff's criminal trial, his motion for judgment of acquittal was denied.  (Ex. 4, Transcript at 8-9).  Without citing any authority, defendant equates this with a finding of probable cause by the trial court.  As the court did not give any grounds for the denial of the motion, this rote denial should not be equated to a finding of probable cause.  Under the standards for deciding a motion for judgment of acquittal the court was *required* to accept defendant's version of the facts as true.  But, as pointed out previously, whether that version is true is the issue on which this action turns.

III.     Defendant Is Not Entitled To Qualified Immunity

In assessing a claim for qualified immunity, the court must "(i) identify the right allegedly violated; (ii) determine whether the constitutional right violated was clearly established at the time of the incident; and (iii) evaluate whether a reasonable officer would have understood that the conduct at issue violated the clearly established right."  Ransom, supra, 111 F. Supp. 2d at 708; S.P.

v. City of Takoma Park, 134 F.3d 260, 265 (4th Cir. 1998).  In the context of a warrantless arrest, the court must determine "whether a police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest, i.e., to believe that the arrestee was committing a crime."  Sevigny v. Dicksey, 846 F.2d 953, 956 (4th Cir. 1988).

As stated above, the conclusion that probable cause existed is based upon the supposition that defendant's version of the facts is correct.  If defendant's version is disbelieved, then defendant did not have probable cause to believe that a crime had been committed, nor could it be reasonably believed that he did have probable cause.  If defendant had no probable cause, then he could not reasonably believe that arresting plaintiff would not violate plaintiff's constitutional rights.  See, e.g., Chin v. City of Baltimore, 241 F. Supp.2d 546, n.4 (D. Md. 2003).

For these reasons, defendant's motion for summary judgment should be denied.

Respectfully submitted,

_____/s/_____
W. Michel Pierson

_____/s/_____
Cheryl D. Hale
Suite 1420
201 E. Baltimore Street
Baltimore, Maryland 21202
(410) 727-7733

Attorneys for Plaintiffs

9

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2003, a copy of this Memorandum in Opposition to Summary Judgment was mailed to Andrew J. Murray, Esquire, Senior Assistant County Attorney, Office of Law, 2660 Riva Road, 4th Floor, P.O. Box 6675, Annapolis, Maryland 21401, Attorney for Defendant.

_____/s/_____
Cheryl D. Hale